*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MATTHEW SCOTT FIELDS,

Defendant-Appellant.

UNPUBLISHED
August 06, 2026
11:38 AM

No. 375113
St. Clair Circuit Court
LC No. 24-001927-FH

Before: ACKERMAN, P.J., and BAZZI and LIEVENSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of possession of methamphetamine, MCL 333.7403(2)(b)(*i*), and possession of amphetamine, MCL 333.7403(2)(b)(*ii*). The trial court sentenced defendant to 3 to 20 years' imprisonment for the possession of methamphetamine conviction and 2 to 4 years' imprisonment for the possession of amphetamine conviction. We affirm his convictions, vacate his sentences, and remand for resentencing.

## I. FACTUAL BACKGROUND

This case arose out of the execution of a search warrant at an apartment at Grandview Towers in Port Huron. According to the search warrant affidavit, in July 2024, the St. Clair County Drug Task Force received reports from credible and reliable confidential informants that defendant either possessed or sold illegal drugs in St. Clair County. Officers investigated and learned that defendant was on parole from a prior drug offense. They also learned from a credible and reliable informant that defendant lived with his mother at Grandview Towers in Port Huron, investigated Secretary of State records, and found that defendant's mother's address was at a Grandview Towers apartment. Officers conducted surveillance at Grandview Towers and saw defendant "coming and going" from the complex "multiple times," though they did not specify the surveillance dates in the affidavit.

Then, using an informant, law enforcement conducted two controlled buys of suspected illegal controlled substances from defendant in the 30 days before seeking a warrant, with the second buy occurring within the previous 36 hours. During both buys, law enforcement surveilled defendant after the buy was complete and saw him go to Grandview Towers.

-1-

On August 6, 2024, a St. Clair County Sheriff's Deputy submitted an affidavit for a search warrant. A magistrate approved the search warrant based on the Deputy's affidavit.

According to defendant, that same day, at around 1:00 p.m., though it is unclear whether these events occurred before, at the same time, or after the Deputy secured the search warrant, defendant and his girlfriend, Kaylee Rataj, were in the apartment when someone knocked at the door. Neither defendant nor Rataj responded or opened the door. It turned out the knocking had come from the building manager and a "maintenance worker" who defendant says was Marysville Police Officer Daniel Stocker, a member of the St. Clair County Drug Task Force. The building manager used a key to unlock the door and, when defendant then responded as the door was opening, the manager stated that she and a "maintenance worker" had to come check an emergency pull cord alarm installed in the bathroom. The building manager and "worker" went into the apartment's bathroom for two minutes and then left the apartment.

The parties disagree about the origin of and what happened during the visit: according to defendant, the bathroom's emergency alarm did not sound and Officer Stocker came inside the apartment; according to the prosecution, Officer Stocker was at the building conducting surveillance at the time and, when the bathroom's pull cord alarm sounded, Officer Stocker accompanied the building manager to the door of the apartment but may not have entered.

Regardless, the affidavit did not mention an officer visiting the apartment on August 6, 2024, though, again, we do not know whether an officer had done so when it was submitted.

Police executed the warrant at defendant's mother's apartment at approximately 7:00 p.m. that same evening. Officers recovered methamphetamine from the pocket of defendant's shorts, amphetamine pills, drug paraphernalia, and drug packaging material.

Defendant was charged with possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*), possession of amphetamine, MCL 333.7403(2)(b)(*ii*), and maintaining a drug house, MCL 333.7405(1)(d). Rataj also was charged; she later pleaded guilty to methamphetamine possession and agreed to testify.

Before trial, defendant moved to suppress the evidence seized pursuant to the search warrant and for a *Franks*[1] hearing. He argued that the search warrant affidavit contained a material omission by not including that Officer Stocker entered the apartment on August 6, 2024, which he believes was the real way law enforcement learned where he lived, rather than from a confidential informant. He also argued that the search warrant affidavit did not set forth sufficient facts to show that the confidential informant who reported that defendant lived at the apartment building was credible or reliable, and therefore the search warrant did not contain probable cause to search the apartment. The trial court denied defendant's motion to suppress and request for an evidentiary hearing, holding that Officer Stocker's alleged visit did not rise to the level of a material omission and the affidavit contained sufficient probable cause to issue the warrant.

---

[1] See *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978).

At trial, the jury found defendant not guilty of possession with intent to deliver methamphetamine and maintaining a drug house, but guilty of the lesser included offense of methamphetamine possession and guilty of amphetamine possession.

At sentencing, a dispute arose over the scoring of Offense Variable (OV) 14, which addresses whether or not the defendant "was a leader in a multiple offender situation." MCL 777.44(1)(a). Defendant objected to scoring points for OV 14, arguing that it should be scored at zero. The trial court assessed 10 points for OV 14, which gave him 15 total OV points and put him at OV Level II and, combined with a PRV Level F, a guidelines range of 19-38 months. Without the 10 points he would have been at OV Level I and had a guidelines range of 10-23 months. The trial court sentenced defendant as explained above. This appeal followed.

## II. THE SEARCH WARRANT

Defendant asserts that the trial court erred in denying his motion to suppress and for a *Franks* hearing because the search warrant affidavit omitted material information about Officer Stocker's visit to the apartment with the building manager and did not establish that the confidential informant who linked him to the apartment building was reliable, thus negating probable cause. We disagree.

### A. STANDARDS OF REVIEW

"This Court reviews de novo questions of constitutional law and a trial court's decision on a motion to suppress evidence." *People v Brcic*, 342 Mich App 271, 277; 994 NW2d 812 (2022).

"A trial court's decision to hold an evidentiary hearing is generally reviewed for an abuse of discretion." *People v Danto*, 294 Mich App 596, 613; 822 NW2d 600 (2011). An abuse of discretion occurs when a trial court's decision "falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013). "The facts supporting the grant or denial of an evidentiary hearing are reviewed for clear error, and the application of the law to those facts is reviewed de novo." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017).

### B. THE TRIAL COURT DID NOT ERR IN DENYING DEFENDANT'S MOTION

"Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Pagano*, 507 Mich 26, 31-32; 967 NW2d 590 (2021), citing US Const, Am IV; Const 1963, art 1, § 11. "Reasonableness is measured by examining the totality of circumstances." *People v Williams*, 472 Mich 308, 314; 696 NW2d 636 (2005). "Generally, if evidence is unconstitutionally seized, it must be excluded from trial." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012). "In order to show that a search was in compliance with the Fourth Amendment, the police must show either that they had a warrant or that their conduct fell within one of the narrow, specific exceptions to the warrant requirement." *People v Vaughn*, 344 Mich App 539, 552; 1 NW3d 414 (2022) (quotation marks and citation omitted).

"Probable cause sufficient to support issuing a search warrant exists when all the facts and circumstances would lead a reasonable person to believe that the evidence of a crime or the contraband sought is in the place requested to be searched." *People v Ulman*, 244 Mich App 500, 509; 625 NW2d 429 (2001) (quotation marks and citation omitted). A probable-cause determination must be based on the facts presented to the judge or magistrate by oath or affirmation. *People v Waclawski*, 286 Mich App 634, 698; 780 NW2d 321 (2009). When probable cause is averred in an affidavit, "the affidavit must contain facts within the knowledge of the affiant and not mere conclusions or beliefs." *Id*. (quotation marks and citation omitted).

If the information used to support probable cause is supplied by an unnamed person, the affidavit must contain "affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable." MCL 780.653(b). "A warrant may issue on probable cause if the police have conducted an independent investigation to confirm the accuracy and reliability of the information regardless of the knowledge and reliability of the source." *Waclawski*, 286 Mich App at 699. "A magistrate's finding of probable cause and his or her decision to issue a search warrant should be given great deference and only disturbed in limited circumstances." *Franklin*, 500 Mich at 101.

Also, the United States Supreme Court held in *Franks v Delaware*, 438 US 154, 155-156; 98 S Ct 2674; 57 L Ed 2d 667 (1978), that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

In other words, "*Franks* held that a defendant is entitled to an evidentiary hearing in order to show that the affidavit is void when the defendant makes a substantial preliminary showing of a deliberate falsehood or reckless disregard for the truth by the affiant." *Franklin*, 500 Mich at 103.

Here, the search warrant affidavit established probable cause to search the identified location, and defendant's arguments to the contrary fail such that the trial court correctly denied his request for a *Franks* hearing.

The affidavit included information supplied by a confidential informant who advised that defendant was living with his mother at Grandview Towers. The affidavit described the informant as reliable and explained why, noting that the informant had provided information that had "proven to be both current and accurate." Thus, defendant is wrong that the affidavit lacked a basis that this information came from a reliable source. The officers then investigated the location using Secretary of State records and determined that defendant's mother's address matched the

Grandview Towers address. And, while conducting surveillance of the location, officers saw defendant "coming and going" from the apartment complex.

Additionally, law enforcement conducted two controlled buys with defendant using a confidential informant in the 30 days preceding the affidavit and both times officers observed defendant returning to the apartment complex. Thus, the affidavit explained the affiant's basis for believing the confidential informant was reliable, and law enforcement confirmed defendant's link to the apartment building by independent investigation. *Waclawski*, 286 Mich App at 699. And that investigation established that a reasonably cautious person could have concluded that there was substantial evidence that controlled substances, or related evidence would be found in the apartment. *Id*.

In this context, the trial court correctly concluded that there was no material omission in the affidavit when the affiant did not include information about Officer Stocker's presence at the apartment on the day of the search.

"The defendant has the burden of showing, by a preponderance of the evidence, that the affiant knowingly and intentionally, or with a reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to the finding of probable cause." *Ulman*, 244 Mich App at 510 (citations omitted). This same standard applies to "material omissions" from affidavits used to obtain search warrants. *Id*. Defendant's burden of showing that a warrant contained a material omission and his burden of showing that he is entitled to a *Franks* hearing are similar, although the trial court can hold an evidentiary hearing on "the veracity of a warrant 'even in the absence of the substantial preliminary showing required by *Franks*.' " *People v Bogucki*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 372629); slip op at 12, quoting *Franklin*, 500 Mich at 111. The fact that a trial court *can* hold a *Franks* hearing without a substantial preliminary hearing, however, does not mean that a defendant is relieved of his burden to show that he is entitled to such a hearing. *Ulman*, 244 Mich App at 510.

Establishing that the affiant police officer "intentionally or recklessly omitted relevant information does not, by itself, invalidate the warrant." *People v Mullen*, 282 Mich App 14, 23; 762 NW2d 170 (2008). Instead, the test is whether the "remaining information in the search warrant affidavit, after the improperly omitted information is added and the improper information is disregarded, is sufficient to form probable cause to issue [the] search warrant . . . ." *Id*. at 27. "Importantly, only when material misstatements or omissions necessary to the finding of probable cause have been made should a search warrant be invalidated." *Czuprynski*, 325 Mich App at 471.

Even if defendant's version of events regarding Officer Stocker's visit to the apartment were true, and the encounter occurred before law enforcement submitted the affidavit, the omission was not material to the probable cause determination. The affidavit established probable cause that contraband or evidence of a crime would be found in the apartment. *Waclawski*, 286 Mich App at 699. That is true even if it included the information that Officer Stocker saw defendant inside the apartment that day. *Mullen*, 282 Mich App at 27. Defendant's argument that law enforcement exhibited a "reckless disregard for the truth," and that they "did not have probable cause that he would be inside the apartment, and they had to confirm it, and they did confirm it by going there" is incorrect. The affidavit had to establish probable cause that evidence of a crime would be found in the location to be searched; it did not need to establish that defendant was

present there. Law enforcement had that probable cause even before Officer Stocker went to or in the apartment, and they had it after. Defendant has not shown that law enforcement materially omitted information that would invalidate the search warrant or that requires additional factual development in a *Franks* hearing.

## III. OV 14 AND ACQUITTED CONDUCT

Defendant next argues that the court erred by assessing 10 points for OV 14 for several reasons, including because it considered acquitted conduct when it assessed the points. We agree.

### A. STANDARD OF REVIEW

Under the sentencing guidelines, a trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Thompson*, 314 Mich App 703, 708; 887 NW2d 650 (2016). "We review de novo whether the facts as found were adequate to satisfy the statutory scoring conditions." *People v Carlson*, 332 Mich App 663, 666; 958 NW2d 278 (2020). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012) (quotation marks and citation omitted). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a [presentence investigation report], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

### B. THE TRIAL COURT ERRED BY RELYING ON ACQUITTED CONDUCT TO SCORE OV 14

OV 14 requires that 10 points be assessed when scoring defendant's sentencing guidelines when "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). "[T]he plain meaning of 'multiple offender situation' as used in OV 14 is a situation consisting of more than one person violating the law while part of a group." *People v Dickinson*, 321 Mich App 1, 22; 909 NW2d 24 (2017) (quotation marks and citation omitted). When determining whether a defendant was a leader under OV 14, "a trial court should consider whether the defendant acted first or gave directions or was otherwise a primary causal or coordinating agent." *Id*. (quotation marks and citation omitted). OV 14 specifically provides that the "entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a). Accordingly, for OV 14, "[p]oints must be assessed for conduct extending beyond the sentencing offense." *People v McGraw*, 484 Mich 120, 127; 771 NW2d 655 (2009).

Our Supreme Court held in *People v Beck*, 504 Mich 605, 609-630; 939 NW2d (2019), that trial courts cannot make factual findings at sentencing on the basis of "acquitted conduct." *People v Beesley*, 337 Mich App 50, 61-62; 972 NW2d 294 (2021). " 'Acquitted conduct' means any 'conduct . . . underlying charges of which [the defendant] had been acquitted.' " *People v Roberts (On Remand)*, 331 Mich App 680, 688; 954 NW2d 221 (2020), rev'd on other grounds 506 Mich 938 (2020). "Consequently, a sentencing court must consider a defendant as having undertaken no act or omission that a jury could have relied upon in finding the essential elements of any acquitted offense were proved beyond a reasonable doubt." *Beesley*, 337 Mich App at 62 (quotation marks and citation omitted).

There is an important distinction "between acquitted conduct—conduct a jury has determined the prosecutor failed to prove beyond a reasonable doubt—and uncharged conduct—conduct about which the jury has made no finding." *People v Boukhatmi*, 351 Mich App 181, 191; 34 NW3d 914 (2024). To identify which facts and circumstances are prohibited from consideration at sentencing, this Court in *People v Brown*, 339 Mich App 411, 423; 984 NW2d 486 (2021), used an approach focused "on what the parties actually disputed at trial." This approach involves "examining the record to determine the ground or grounds upon which a rational jury could have acquitted the defendant." *Id*. "Under *Brown*'s rational-jury standard, we look at the conduct actually disputed at trial to determine the basis of the jury's acquittal and whether the evidence the trial court considered at sentencing was consistent with that acquittal." *Boukhatmi*, 351 Mich App at 192. "Moreover, if a specific fact or circumstance was relevant to both the acquitted charge and the convicted charge—i.e., if there was an overlap of relevant conduct—then the trial court could consider that fact or circumstance when sentencing on the convicted charge." *Brown*, 339 Mich App at 425.

Defendant was acquitted of violating MCL 333.7401, the possession with intent to deliver statute, which "makes it illegal to 'manufacture, create, deliver, or possess with intent to manufacture, create, or deliver' a controlled substance, MCL 333.7401(1), including methamphetamine, as charged against defendant." *People v Wells*, ___ Mich ___, ___; 22 NW3d 549, 551 (2025). Meanwhile, the jury convicted him of violating MCL 333.7403, the simple possession statute, which "makes it illegal to 'knowingly or intentionally possess a controlled substance,' MCL 333.7403(1), in this case, methamphetamine, MCL 333.7403(2)(b)(*i*). The key elemental difference between the two statutes is the intent to deliver the substance." *Id*. at ___; 22 NW3d at 551; see also *People v Robar*, 321 Mich App 106, 131; 910 NW2d 3285 (2017).

Therefore, the issue of whether defendant delivered or had the intent to deliver was submitted to the jury. Based on the verdict, the jury concluded that he did not act with the requisite intent to deliver methamphetamine. The sentencing court violates due-process protections if it then relies "on the intent element, the only element differentiating the charge that the jury rejected—possession with intent to deliver—from the one that the jury found defendant guilty of completing beyond a reasonable doubt—simple possession." *Wells*, ___ Mich at ___; 22 NW3d at 551.

Despite this, the trial court assessed 10 points for OV 14 because it found defendant was supplying Rataj with methamphetamine to foster and encourage a romantic relationship. The trial court stated as follows regarding OV 14:

> [T]he Court is . . . required to score the guidelines at the highest appropriate number, based upon the evidence that is available. And I . . . get the common general understanding of the definition of leader in this context. And if all we had was [defendant] supplying drugs to the co-defendant and no other information I think an argument could be made that he's not a leader. But I think there is some evidence of guidance or direction. *It was pretty clear to me from the evidence and from the co-defendant and . . . from the [d]efendant that the whole purpose from, in my view, for the delivery, in my view, there was a delivery, even though the jury disagreed . . . for delivering of methamphetamine was to facilitate [sic] romantic relationship.*

-7-

* * *

And I'm confident that the relationship was such and it wouldn't have existed had it not been for *[defendant] being in a position to supply the Methamphetamine to a much younger, much less sophisticated, very naïve, very, . . . vulnerable individuals* [sic] as the co-defendant in this case.

I think there is evidence of leadership and I'm going to leave OV 14 scored at 10 points. [Emphasis added.]

The trial court explicitly referenced defendant's delivery of or intent to deliver methamphetamine to Rataj to facilitate their romantic relationship as the basis for finding that defendant was the "leader" in a "multiple offender situation" and assessed 10 points for OV 14. This was impermissible because, in short, the trial court's findings cannot be used to establish defendant's "leadership" status, nor can they be used to establish that defendant's offense, simple possession, was somehow a "multiple offender situation." Because a "sentencing court may not rely even in part on acquitted conduct when imposing a sentence for the defendant's conviction" under *Beck*, a trial court cannot rely upon acquitted conduct to score OV 14 or any other offense variable. *People v Stokes*, 333 Mich App 304, 310; 963 NW2d 643 (2020). Under the rational-jury standard established in *Brown*, the sentencing court could not consider defendant's intent to deliver or the possibility that he gave, or would give, methamphetamine to Rataj because he was acquitted of that conduct.

Resentencing, therefore, is appropriate when the defendant's sentence was based upon an inaccurate calculation of the sentencing guidelines range. *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006). With the change to the scoring of OV 14, defendant's total OV score would be 5 points (rather than 15), which places defendant's OV at level I, instead of level II. And, with a PRV Level F, his guidelines would be 10 to 23 months as a nonhabitual offender, MCL 777.65, rather than the 19 to 38 months guideline range used at defendant's sentencing. Because defendant's minimum guideline range would be altered by correcting the scoring error, defendant is entitled to resentencing. *Francisco*, 474 Mich at 92.

Separate from OV 14, defendant argues that the trial court improperly considered acquitted conduct related to his intent to deliver drugs in other ways when it sentenced him, or that his counsel was ineffective for failing to object to the trial court's use of acquitted conduct at sentencing. These issues are moot since we are already remanding for resentencing, and so we decline to consider them. *People v Thue*, 336 Mich App 35, 39; 969 NW2d 346 (2021). See also *People v Bailey*, 310 Mich App 703, 728; 873 NW2d 855 (2015) (declining to consider a claim that defense counsel was ineffective when the Court remanded the case for resentencing on different grounds).

We affirm defendant's convictions, vacate his sentence, and remand for resentencing. We do not retain jurisdiction.

/s/ Matthew S. Ackerman
/s/ Mariam S. Bazzi
/s/ Andrew J. Lievense

-8-